[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff-husband (PLTF) filed his complaint on March 8, 1993, seeking a dissolution of marriage, counsel fees, equitable distribution of personal property, etc. The defendant (DEFT) filed her answer and cross-complaint on March 17, 1993. The answer admitted the essential allegations of the PLTF's complaint and the cross-complaint sought similar relief.
The parties appeared with respective counsel and gave their CT Page 3271 testimony together with supporting exhibits.
The following findings of fact and conclusions drawn are made:
1. The parties were married at Douglas, Arizona on June 3, 1967. Thus at the time of the hearings the parties had been married 26 years.
2. Both had resided continuously in this State for more than one year prior to the filing of the complaint on March 8, 1993.
3. Two children were born, lawful issue of this union, whose names are Daniel Richard Asch and David Lawrence Asch. As of the hearings both were adults. There are no minor children, issue of the this marriage.
4. Neither the parties nor the two children have ever been the recipients of public welfare assistance.
5. Both testified that the marriage was irretrievably broken down. Although the DEFT was, prior to the initiation of the dissolution, reluctant to admit to the total breakdown and sought to renew counselling, the PLTF would not agree. He had separated on his own thinking that this would be the answer to lead to a restoration of the former love and marital bliss between the parties. He admitted failure and returned to the marital residence. However, later he instituted the dissolution action. I accepted the testimony and will of the parties and find that their marriage has broken down irretrievably with no prospect of a reconciliation.
6. A certain degree of sadness creeps into the mind as one contemplates the facts in this case. There was little or no rancor or vindictiveness displayed in the course of the testimony or in the testimony elicited covering all the years they resided together. This attitude persisted up to the final separation and the post-separation period. Both testified to lack of communication between the parties which gradually brought about the estrangement. The PLTF placed some emphasis on the DEFT's inability to enjoy long drives into New York City because she suffered motion sickness. DEFT did not regard this as a valid excuse. She placed it simply that he chose to exclude her and thereby did not ask for her company. I have concluded that the PLTF is the principal cause of the breakdown because he no longer loved the DEFT and wanted to terminate. CT Page 3272
7. The parties testified that they owned little at the time of their marriage. He was an insurance salesman and she was a practicing registered nurse. From these somewhat meager beginnings they made good strides upwards. He entered the pharmaceutical field as a salesman. From Arizona they made two moves arriving in Connecticut. The moves were made for business reasons affecting the PLTF who continued to advance to his position as district manager. The parties lived harmoniously throughout most of the twenty-six years of marriage but by their joint admissions also lived beyond their means. Both worked full time until their first child was born. DEFT resumed work thereafter until the second child was born. At this point they mutually agreed that the DEFT should remain at home to raise the children. This she did in very good fashion and almost single handed because the PLTF was constantly on the road as required by his work.
8. It is to be noted that the DEFT became interested in a business career outside the nursing profession in which she had not practiced since she had retired to care for the home and the personal needs of the entire family. The PLTF conceded that she had performed very well in the home and in the rearing of the two boys who are a credit to the family. However, the PLTF consented to the DEFT's furtherance after education which he paid for. This enabled her to become an accountant. She secured a position with Praxair, Inc. The PLTF had at his best and for a number of years prior to their separation an annual base pay of $91,000. Added to this from commissions received is a gross of $17,420 for a total gross earned income of $108,420. Her gross earned income on her latest financial affidavit was $37,908. She testified that her maximum earnings were at $39,000.
9. There were, of course, many expenditures incurred throughout the marriage. They had joint banking accounts and pooled their earnings. The sons went to expensive schools and all expenses were met by the parents. In fact the PLTF's latest F.A. lists an outstanding loan at "Stanford College" for a son. The PLTF who met the brunt of the college expenses, exceeding $200,000 as testified to by both, is currently paying the reported balance of $7920 alone although both have signed to pay.
10. There is much more financial testimony relating to earnings and expenditures reviewed by the undersigned which will not be included in this memorandum. CT Page 3273
Having considered the factors set forth in the pertinent Connecticut General Statutes, the following Orders of the Court are entered:
A. A decree dissolving the marriage on the ground of irretrievable breakdown may enter.
B. 1. Both of the parties were awarded severance pays after they were terminated from their respective positions by their employers who have joined many other entities seeking to restructure themselves to reduce costs. The DEFT requested an equal division of the PLTF's severance pay in addition to keeping her own. His severance pay will be in a lump sum amount of $247,760. gross. The net, after payment of taxes, will be about $131,697. The Court believes an allocation to her of one-third is more equitable.
2. The PLTF is ordered to pay $43,899 from his severance pay to the DEFT as lump sum alimony. This sum to be paid forthwith and in any event not later than thirty days from the date of this Order unless the same has not been disbursed to the PLTF. In that event payment shall be made not later than fourteen days after the severance pay has been disbursed to the PLTF.
C. 1. There are funds being held in escrow, the remains of proceeds from the sale of the last family residence. The PLTF seeks a reimbursement of $7500 which he claims he for. This was to set in a new septic system to facilitate the sale of the residence. The DEFT has no objection provided proof is presented of the amount actually paid up to $7500.
2. With the foregoing proof of payment proviso, the escrow funds will be divided equally between the parties after payment of $7500 is made to the PLTF.
D. The DEFT shall retain as her property all jewelry, furs, household items and any other items personal to her in her possession. The PLTF shall do likewise.
E. There is an amount due the Union Trust Bank on their joint checking account. The PLTF is ordered to pay this debt and hold the DEFT harmless. CT Page 3274
F. 1. The DEFT has an outstanding loan balance on her 401K plan. Originally she withdrew $10,000 from her plan while the PLTF withdrew $35,000 from his plan outright and not by way of loan. These funds were used to meet bills of various sorts, joint and single.
2. It's ordered that the total amount of the two 401K plans shall be divided equally by the parties after payment is made of the balance of the DEFT's loan against her plan. The excess that will be due the DEFT shall be rolled over by the PLTF into a tax deferred retirement account selected by the DEFT. Any penalties or taxes resulting from this action shall be bore equally by the parties.
G. 1. The PLTF admitted selling household furniture for $1400 and was agreeable to giving one-half that sum to the DEFT.
2. The PLTF is ordered to pay over to the DEFT $700.
H. 1. Each of the parties had a pension plan at their last place of employment. They are in agreement to share equally their respective plans.
2. Accordingly each is awarded fifty (50%) percent of the other's pension as of the date of this memorandum of decision which shall include accrued interest from this date to the date payments begin. Qualified Domestic Relations Orders to meet the legal requirements of each plan are to be prepared by counsel. Any fees resulting from these services will be paid to their respective attorneys by each of the parties.
I. At the hearings, the DEFT did not own an automobile and the PLTF was operating a company vehicle which he lost upon severance. Consequently no orders are necessary in this area.
J. Each of the parties had an IRA account listed on their respective financial affidavits (FA). The two accounts, as of the hearing date and as set forth on said FA's shall be added together and divided equally by the parties. The PLTF shall pay over any amount due to the DEFT less any penalty that may be incurred in carrying out this order.
K. On the question of liabilities, all of the DEFT's liabilities as stated on her FA have been provided for above. The PLTF will be responsible and pay all liabilities CT Page 3275 listed on his financial affidavit and hold the DEFT harmless therefrom and indemnify her for any damages in defending herself including a reasonable attorney's fee.
L. Any checking, savings or money market accounts in existence and not heretofore provided for shall be the sole property of the person having the same.
M. Counsel fees in the amount of $3,900 have already been paid by the DEFT to her attorney. She will be securing additional funds as a result of the above financial orders. The PLTF shall pay to the DEFT $1100. on account of attorney fees.
N. Each is covered by a medical plan and each shall be responsible for the cost of the same including uninsured and unreimbursed medical and dental expenses.
O. 1. Each of the parties has been severed from their last employment and each will receive the same unemployment compensation at the maximum amount. Each will be seeking new employment and each has strong credentials. The PLTF has demonstrated a superior earning capacity in the past and their is no reason, at this time, to expect a change. Each testified to being in good health and not treating with a physician. PLTF points to the tightening of the labor market in his pharmaceutical specialty. There is no other evidence on this score which might negate a resurgence of jobs. However, he will obtain his employer's recommendation and he should succeed well in other selling positions.
2. The DEFT likewise is qualified in two rewarding professions; nursing and accountancy and business administration. She too is seeking further employment with a possibility of hospital administration.
3. At this time, referring to the dates of the hearings, the parties are unemployed. The PLTF is ordered to pay to the DEFT as permanent periodic alimony the sum of one ($1.00) per year. This order shall remain until either or both are gainfully employed. At that time the PLTF shall pay to the DEFT a sum which when added to her gross income shall equal forty (40%) of his gross income. The DEFT's income shall include earned and unearned income from all sources. There shall be an accounting every quarter when the parties shall exchange information dealing with the above to determine the amount, if any, to be paid to the DEFT. Payment of this alimony CT Page 3276 order shall be made quarterly.
P. The PLTF has an insurance policy with a face value of $100,000. He is ordered at this time to designate to DEFT to be a fifty (50%) percent beneficiary with their two sons. She will remain such a beneficiary until the happening of the first of the following: her death before the PLTF, her remarriage or her cohabitation with a non-related male pursuant to the statute.
Q. The permanent periodic alimony order shall terminate upon the happening of the first of the following events: the death of either party, remarriage of the DEFT or her cohabitation with a non-related male person pursuant to the statute.
The Court believes all issues have been covered. If any have been overlooked, this decision will be amended accordingly on motion of either party.
Counsel are requested to collaborate in the preparation of the judgment file.
JOHN OTTAVIANO, JR. STATE TRIAL REFEREE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 3281